**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULISSA COTA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PORVEN, LTD., d/b/a/ PORCELANOSA USA,<br><br>Defendant. | Case No. 20-cv-01806-BAS-RBB<br><br>**ORDER DENYING MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT**<br><br>**(ECF No. 7)** |

Before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction Plaintiff's state-law claim (Count II). (Mot., ECF No. 7; Mem., ECF No. 7-1.) Plaintiff opposes (Opp'n, ECF No. 10) and Defendant replies (Reply, ECF No. 11). The Court finds the Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. LR 7.1(d)(1). For the reasons explained below, Defendant's Motion is **DENIED**.

**I.   BACKGROUND[1]**

Plaintiff Julissa Cota, a California citizen, is a visually-impaired and legally blind person who requires screen-reading software in order to access website content using her

---

[1] These facts are all taken from the Complaint. For this Motion, the Court accepts all of Plaintiff's factual allegations as true. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

– 1 –

computer. (Compl. ¶¶ 1, 25, ECF No. 1.) Defendant Porven, Ltd., doing business as Porcelanosa USA, is a designer, manufacturer, and distributor of kitchen and bath hardware and tiles. (*Id.* ¶¶ 5, 24.) Defendant is incorporated in Delaware, headquartered in New Jersey, and maintains brick-and-mortar stores across the United States. (*Id.* ¶ 5.) According to Plaintiff, Defendant "conducts a large amount of its business in California." (*Id.*) Through its website, http://www.porcelanosa-usa.com/, Defendant provides consumers with information about products, services, and store locations and enables consumers to procure samples of materials, either online or for pick-up at Defendant's stores. (*Id.* ¶¶ 5, 24.)

Screen-reading software currently is the only method available to people with visual impairment and blindness that enables them to access the internet independently. (*Id.* ¶ 16.) In essence, screen-reading software operates in conjunction with keyboards to vocalize the visual information found on a computer screen. (*Id.*) If the content contained on a website is incapable of being rendered into text, the website is incompatible with screen-reading software and, thus, visually-impaired and blind persons will be unable to access its content to the same extent as sighted persons. (*Id.* ¶ 18.)

Plaintiff alleges that on "numerous" occasions, including "[r]ecently in 2020," she attempted to do business with Defendant on its website. (*Id.* ¶ 26.) However, she purportedly was unable to do so because Defendant's website was incompatible with her screen-reading software. (*Id.* ¶ 28.) Plaintiff avers she encountered four accessibility barriers on Defendant's website:

(1) lack of alternative text ("alt-text") necessary for screen-reading software to translate visual information to speech;
(2) empty links that confuse and complicate accessibility for screen-reader users;
(3) redundant links that cause additional, unnecessary navigation for scree-reader users; and
(4) linked images that omit alt-text and prevent screen-reader users from consuming certain content altogether. (*Id.* ¶ 27(a)–(d).)

Consequently, Plaintiff claims that she and other visually-impaired and blind individuals who use screen-reading software have been denied full and equal access to Defendant's website. (*Id.* ¶¶ 30–31.) According to Plaintiff, these accessibility barriers violate both the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181, and California's Unruh Civil Rights Act ("Unruh Act"), and, thus, give rise to claims thereunder. (*Id.* ¶¶ 56–69.)

In this action, Plaintiff seeks to represent not only herself, but two putative classes: a nationwide class in connection with her ADA claim (Count I) and a California-only class in connection with both her ADA claim and her Unruh Act claim (Count II).[2] (*Id.* ¶¶ 43–44.) The Complaint expressly alleges that this Court "has subject matter jurisdiction over the state law claims alleged in the Complaint pursuant to the Class Action Fairness Act [("CAFA")], 28 U.S.C. § 1332(d)(2)(A)[.]" (Compl. ¶ 9.)

On December 21, 2021, Defendant moved to dismiss Plaintiff's Unruh Act claim for lack of subject matter jurisdiction. (Mot., ECF No. 7; Mem., ECF No. 7-1.) Defendant explicitly stated its challenge is a facial one. (Mem. 7.) In support of its Motion, Defendant's moving papers lodge a single strand of jurisdictional argument: that, under the circumstances, the Court should decline to extend supplemental jurisdiction over Plaintiff's Unruh Act claim pursuant to several provisions of the supplemental jurisdiction statute, 28 U.S.C. § 1367(c)(2) and (4).[3] (*See generally id.*; Reply, ECF No. 11.) On the other hand, Plaintiff contends that the Court lacks discretion under any one of the supplemental jurisdiction statute's provisions to make such a declination. (*See generally* Opp'n, ECF No. 10.) Notably, neither party's submission refers to the basis for jurisdiction alleged in the Complaint: CAFA. (Compl. ¶ 9).

---

[2] Plaintiff's putative "Nationwide Class" consists of all legally blind individuals across the country who have attempted to access Defendant's website using screen-reading software during the applicable limitations period up to and including final judgment in this action. (Compl. ¶ 43.) Plaintiff's putative "California Class" consists of just those individuals who are residents of the state of California. (Compl. ¶ 44.)

[3] As an alternative, Defendant also argues that § 1367(1) may provide a third ground upon which this Court can exercise its discretion to decline jurisdiction.

## II. LEGAL STANDARD

### A. Supplemental Jurisdiction

The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). If this requirement is satisfied, then supplemental jurisdiction is mandatory unless prohibited under the limited circumstances specified by § 1367(b), which are inapposite here, or unless one of the exceptions in § 1367(c) applies.

Under § 1367(c), a district court may decline supplemental jurisdiction over a state law claim pursuant to any one of the following four provisions:

> (1) the claim raises a novel or complex issue of State law;
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *San Pedro Hotel Co. v. City of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998).

When a district court declines supplemental jurisdiction over a state law claim pursuant to one of the first three provisions (§ 1367(c)(1)–(3)), it need not state its reasons for dismissal. *San Pedro Hotel Co.*, 159 F.3d at 478. However, when a court finds "exceptional circumstances" warrant a declination of supplemental jurisdiction (§ 1367(c)(4)), it must "articulate why the circumstances of the case are exceptional," and consider whether values of judicial economy, convenience, fairness, and comity provide compelling reasons for declining jurisdiction. *Exec. Software N. Am., Inc. v. U.S. Dist. Ct.*, 24 F.3d 1545, 1552 (9th Cir. 1994). "[I]f these are not present a federal court should

hesitate to exercise jurisdiction over state claims[.]" *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

### B. Rule 12(b)(1) – Jurisdictional Challenge

Under Rule 12 of the Federal Rules of Civil Procedure, a party may move to dismiss a claim based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by the Constitution or a statute, which is not to be expanded by judicial decree." *Id.* (internal citations omitted). Accordingly, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). "[T]he burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

A plaintiff seeking to invoke federal jurisdiction must show "the existence of whatever is essential to federal jurisdiction," and if the plaintiff fails to do so, the court "must dismiss the case, unless the defect [can] be corrected by amendment." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (per curiam) (quoting *Smith v. McCullough*, 270 U.S. 456, 459 (1926)), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

A challenge to subject matter jurisdiction under Rule 12(b)(1) can be either facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction. *See Safe Air for Everyone*, 373 F.3d at 1039. "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### C. CAFA Jurisdiction

CAFA provides an independent basis for original jurisdiction. 28 U.S.C. § 1332(d)(2); *see Floyd*, 966 F.3d at 1036. "[T]o exercise jurisdiction over a state-law claim pursuant to CAFA, a court does not need underlying federal-question jurisdiction. CAFA expressly extends original federal jurisdiction to state-law claims in class actions under relaxed diversity requirements." *Floyd*, 966 F.3d at 1036. CAFA confers federal jurisdiction over class actions involving: (1) minimal diversity; (2) at least 100 putative members; and (3) over $5,000,000 in controversy, inclusive of attorneys' fees but exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (5).

## III. DISCUSSION

Although the Complaint explicitly and exclusively identifies CAFA as the sole basis for subject matter jurisdiction over Plaintiff's Unruh Act claim, the parties' papers instead solely quarrel over whether the circumstances authorize this Court to decline to extend supplemental jurisdiction over Plaintiff's state-law claim under one of the statute's discretionary provisions. The Court concludes that, despite being closely related to Plaintiff's ADA claim (§ 1367(a), her Unruh Act claim is substantially predominant (§ 1367(c)(2)) and exceptional circumstances supported by this Court's interest in comity and forum-shopping deterrence (§ 1367(c)(4)) warrant declining supplemental jurisdiction.

This Court finds particularly significant the similarity between the case before it and this Court's decision in *Schutza v. Cuddeback*—a similar dual ADA/Unruh Act case in which this Court dismissed the plaintiff's state-law claims for substantially the same reasons it found persuasive here–and its progenies, including those that have applied *Cuddeback's* reasoning to website-accessibility claims. 262 F. Supp. 3d 1025 (S.D. Cal. 2017); *see, e.g.*, *Cota v. Tori Burch LLC*, No. 20-CV-1491-CAB-AGS, 2020 WL 4464432, at *2 (S.D. Cal. Aug. 4, 2020); *Cota v. Sushi Ota Inc.*, No. 20-CV-1721-H-BLM, 2021 WL 108640, at *3 n.1 (S.D. Cal. Jan. 11, 2021); *Farr v. Bristol Farms*, No. 19-CV-588-MWF-JCx, 2020 WL 6562244, at *6 (C.D. Cal. Mar. 5, 2020).

Nevertheless, this Court's finding that it should decline supplemental jurisdiction

over Plaintiff's Unruh Act claim is not dispositive of Defendant's Motion for the Complaint contains allegations that adequately invoke another, independent basis for this Court's original jurisdiction: CAFA. *Allen v. Boeing Co.*, 784 F.3d 625, 628 (9th Cir. 2015) (noting CAFA is an "independent" basis for original jurisdiction). Defendant does not refute any of Plaintiff's CAFA allegations. Accordingly, the Court must deny Defendant's Motion. *See Mondragon v. Cap. One Auto Fin.*, 736 F.3d at 886 ("[U]nder CAFA, the jurisdictional allegations in [a] complaint can be taken as a sufficient basis, on their own, to resolve questions of jurisdiction where no party challenges the allegations.") (citation omitted).

Notwithstanding the Court's finding Plaintiff has adequately alleged CAFA jurisdiction, for reasons of completeness, the Court also will analyze the grounds to decline supplemental jurisdiction under § 1367(c)(1), (2), and (4). The parties clearly have expended significant resources, time, and effort briefing the issue of supplemental jurisdiction. Moreover, the question of whether supplemental jurisdiction extends over Plaintiff's state-law claim may become determinative later in this case, if CAFA jurisdiction ultimately is found inapplicable. Fed. R. Civ. P. 12(h) (providing that a challenge to subject matter jurisdiction can be raised at "any time" during a case); *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) (holding that subject matter jurisdiction arguments can neither be waived nor forfeited).

### A.   Supplemental Jurisdiction

Defendant principally argues that the second and fourth provisions of § 1367(c) militate against this Court's exercise of jurisdiction over Plaintiff's state-law Unruh Act claim supplemental to her federal ADA claim. The Court agrees and finds Plaintiff's arguments to the contrary unavailing.

First, the Court finds that "under the circumstances presented … the monetary damages sought by Plaintiff under the Unruh Act" cause it to "substantially predominate over [the] federal injunctive relief" Plaintiff seeks under the ADA. *Cuddeback*, 262 F. Supp. 3d at 1031; *see* 28 U.S.C. § 1367(c)(2). Unlike the ADA, the Unruh Act allows not

only for injunctive relief but also for money damages. A plaintiff may recover actual damages for each and every violation "up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000)[.]" Cal. Civ. Code § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007) (citing *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000)).

Here, the Complaint expressly seeks "[a]n award of statutory minimum damages [of $4,000] pursuant to California Civil Code § 52 for each and every offense." (Compl. ¶ 67.) Notably, Plaintiff does not allege how many times she attempted to do business with Defendant on its website or how many violations Plaintiff encountered on each visit, and, thus, precludes the Court from intelligently discerning the amount of damages to which Plaintiff would be entitled if she prevails on the merits.[4] However, the Court need not engage in guesswork to conclude Plaintiff's Unruh Act claim is the primary cause of action here. Indeed, Plaintiff seeks monetary damages pursuant to the Unruh Act not just for herself but on behalf of the California Class, which she alleges "is composed of more than 10,000 persons." (Compl. ¶ 46.) The Complaint alleges that the amount in controversy will exceed $5,000,000, but taking Plaintiff's allegations as true, which the Court must, Plaintiff would recover more $40,000,000 if she were to prevail.

Clearly, this case is not just paradigmatic but an extreme example of an instance in which a plaintiff's "predominant focus is uncovering as many possible violations as possible and recover[ing] money damages under the Unruh Act." *Lamden*, 2018 WL 4385377, at *4 (finding that statutory damages available under the Unruh Act substantially predominated over injunctive relief available under the ADA where plaintiff alleged distinct violations that, if proven, would entitle him to a minimum award of $12,000 in statutory penalties); *Cuddeback*, 262 F. Supp. 3d at 1030 (finding Unruh Act claim

---

[4] Plaintiff avers in her Opposition that she alleges "just one violation per visit" (Opp'n 9); however, that assertion is not borne out by the Complaint, which identifies four distinct accessibility barriers that purportedly plague Defendant's website (Compl. ¶ 27(a)–(d)).

substantially predominant where plaintiff sought at least $36,000); *Schutza v. Lamden*, No. 17-CV-2562-L-JLB, 2018 WL 4385377, at *4 (S.D. Cal. Sept. 14, 2018) (finding Unruh Act claim substantially predominant where plaintiff sought at least $12,000); *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1131 (S.D. Cal. 2006) (finding Unruh Act claim substantially predominant where plaintiff sought at least $56,000); *see also Farr*, 2020 WL 6562244, at *6 (finding Unruh claim substantially predominant where plaintiff sought at least $160,000 on a class-wide basis). Consequently, the Court may decline jurisdiction under § 1367(c)(2), so long as no other independent basis for original jurisdiction over Plaintiff's state-law claim exists.

Second, there are "exceptional circumstances" under § 1367(c)(4) to decline subject matter jurisdiction in this case, which are supported by compelling interests in comity and forum-shopping deterrence.

In 2012, California adopted heightened pleading requirements for "complaint[s] alleging a construction-related accessibility claim" under the Unruh Act in order to deter baseless claims and vexatious litigation.[5] *See* Cal. Civ. P. Code §§ 425.50, 425.55(b)(1); *see also* SB1186, Chapter 383 § 24 (Ca. 2012). Among other things, California Code of Civil Procedure § 425.50 requires that "high frequency litigants"—defined as a "plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period preceding the filing of the current complaint," Cal. Civ. P. Code § 425.55(b)(1)—allege:

(1) the specific date(s) the plaintiff attempted to do business with the defendant;
(2) why the plaintiff sought to do business with the defendant;
(3) the specific date(s) of each violation;
(4) the nature and number of accessibility barriers encountered on each occasion;

---

[5] A "[c]onstruction related accessibility claim in a civil action with respect to a place of public accommodation … based wholly or in part on alleged violation of any construction-related accessibility standard." Cal. Civ. Code § 55.52(1).

(5) how the barrier(s) denied full and equal access on each occasion; and
(6) a statement of the number of claims the plaintiff filed in the previous 12 months.

A high frequency litigant also must pay a $1,000 filing fee in addition to the standard filing fees required in California state court. Cal. Gov't Code § 70616.5.

As of June 30, 2020, Plaintiff Julissa Cota has filed 55 disability discrimination cases in this district alone, according to the Public Access to Court Electronic Records ("PACER") database.[6] Indeed, Plaintiff filed 22 of those claims in the three months immediately preceding this action.[7] Plaintiff does not dispute this. Instead, she argues that website-accessibility violations like those alleged in her Complaint are not "construction-related" and, thus, her Unruh Act claim does not fall under California's heightened pleading requirements. Plaintiff further argues the absence of a single California court decision applying § 425.50 to an Unruh Act claim alleging a website-accessibility violation supports her interpretation of the statute.

Plaintiff's interpretation of § 425.50 is at odds with numerous decisions of other courts in this district, which have found that the term "construction-related accessibility violation" is sufficiently broad to encompass website-accessibility violations. *Cota v. Sushi Ota Inc.*, No. 20-CV-1721-H-BLM, 2021 WL 108640, at *3 n.1 (S.D. Cal. Jan. 11, 2021) (finding § 425.50 applied to plaintiff's allegations of barriers on a website, noting "[t]here is no language in section 425.50 limiting the provision to apply to only 'physical barriers'"); *Cota v. Tori Burch LLC*, No. 20-CV-1491-CAB-AGS, 2020 WL 4464432, at *2 (S.D. Cal. Aug. 4, 2020) (applying § 425.50 to Plaintiff Julissa Cota's digital accessibility claim); *accord Farr*, 2020 WL 6562244, at *3 ("Plaintiff's claim relating to website accessibility falls under the definition of 'construction-related claims.'").

---

[6] A federal court may take notice of matters of public record. *Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017). Matters of public record "may include court records available through PACER." *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2017) (citing, *inter alia*, Fed. R. Evid. 201(b)).

[7] *See* note 6.

And while the Court does find significant the absence of any authoritative decision by the California Supreme Court on the matter, it does so for reasons that cut against Plaintiff's argument. Indeed, uncertainty about the application of § 425.50 to website accessibility violations raises a "complex or novel issue of state law" (§ 1367(1)), which a California court should be given an opportunity to decide. *Molski v. Hitching Post I Rest., Inc.*, No. 04-CV-1077-SVWRNBX, 2005 WL 3952248, at *9 (C.D. Cal. May 25, 2005) ("California courts should be given an opportunity to interpret California's disability laws[.]"); *Brick Oven Rest.*, 406 F. Supp. 2d at 1132 ("California courts should interpret California law[.]").

Invoking the *Erie* doctrine, Plaintiff asserts a more novel argument: even if § 425.50 were to apply, the Court would lack any discretionary basis to decline supplemental jurisdiction because federal courts need not concern themselves with procedural provisions of state law. This argument ignores that "a legitimate function of the federal courts is to discourage forum shopping," which is invoked where, as here, there clearly is a calculated effort on the part of Plaintiff to avoid state-law pleading requirements in order to recover damages under a state-law claim. *Brick Oven Rest.*, 406 F. Supp. 2d at 1132; *Langer v. U.S. Green Techs., Inc.*, No. 20-CV-01717-BEN-BGS, 2020 WL 7353447, at *4 (S.D. Cal. Dec. 14, 2020) ("Courts within this district agree that they should decline supplemental jurisdiction where a plaintiff appears to be filing suit in federal court for the purpose of circumventing California state law.").

Notably, Plaintiff omits from her Complaint allegations that she would have been required to plead had she filed this action in state court, including (1) a statement of the 55 disability actions she filed during the six months prior to the commencement of this action; (2) an explanation for why she sought to do business with Defendant; (3) the specific dates of each violation; and (4) the nature and number of accessibility violations encountered on each occasion. The absence of these allegations strongly suggests Plaintiff seeks "to bootstrap h[er] Unruh Act claim onto an ADA claim for the sole purpose of avoiding California's procedural rules [which] would allow Plaintiff the enjoyment of those parts of

California law that benefit h[er] while disallowing the parts purposefully enacted to protect Defendant[]." *Schutza v. Enniss Fam. Realty LLC*, No. 20-CV-0298-W-JBL, 2020 WL 3316969, at *3 (S.D. Cal. June 18, 2020). The Court will not condone this form of forum shopping. *Rutherford v. Ara Lebanese Grill*, No. 18-CV-1057919-AJB-WVG, 2019 WL 1057919, at *5 (S.D. Cal. Mar. 6, 2019) (finding that "it would be improper to allow [p]laintiff to use the federal court system as a loophole to evade California's pleading requirements").

Plaintiff further argues that even if the interests of comity and forum-shopping deterrence weigh in favor of declining supplemental jurisdiction, the other interests a court must consider—judicial economy, convenience, and fairness—tip the balance towards Plaintiff. Specifically, Plaintiff avers that a declination decision would spur a second, parallel state action, thus risking inconsistent decisions, multiplying litigation costs, and wasting judicial resources. But the inefficiencies about which Plaintiff complains would be of her own making. *See Bouyer v. Striks Props. L.P.*, No. CV 20-00965 PA (JEMx), 2020 WL 1969762, at *6 (C.D. Cal. Feb. 12, 2020) ("Whatever inefficiencies are created by the Court's decision to decline to exercise supplemental jurisdiction are problems created by plaintiff's filing of this action in federal court rather than in a state court[.]"). It is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since her sole remedy under the ADA is injunctive relief, which is also available—and which she also seeks—under the Unruh Act. (Compl. ¶ 66); *Cuddeback*, 262 F. Supp. 3d at 1031. Accordingly, the inefficiencies about which Plaintiff alleges pale in comparison to the lofty interest this Court has in comity and in discouraging forum shopping.

As mentioned above, this Court finds the reasoning of its prior decision in *Cuddeback*, a similar dual ADA/Unruh Act case, persuasive here. In *Cuddeback*, the plaintiff, suing only in his individual capacity, alleged that he had encountered nine accessibility violations when he attempted to do business with the Defendant. The plaintiff alleged that the Court had jurisdiction under § 1367(a). However, the defendant contended

– 12 –

that, under the circumstances, the Court should decline supplemental jurisdiction pursuant to § 1367(c)(2) and (4). For substantially the same reasons as set forth above, this Court agreed. *Cuddeback*, 262 F. Supp. 3d at 1025. While it is true, as Plaintiff argues, that not all district courts in this district have adopted *Cuddeback*, the direction of the tide is clear: "over 931 cases have favorably cited [*Cuddeback*] in rejecting supplemental jurisdiction," and, "[a]s a result, almost every district judge in the Southern District [of California] has declined to exercise supplemental jurisdiction over supplemental state law claims in similar cases alleging violations of the ADA and [the Unruh Act]." *Langer*, 2020 WL 7353447, at *4. Plaintiff offers no reason how the interests at stake or facts in this case differ.

Accordingly, the Court finds that the discretionary provisions of § 1367(c)(2) and (4) clearly justify a declination of supplemental jurisdiction over Plaintiff's state-law claim. Nevertheless, that finding is not claim-dispositive if another independent basis for original jurisdiction exists. Because Plaintiff explicitly invokes CAFA as a basis for jurisdiction, the Court must assess the sufficiency of those allegations, too. *See Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027 (9th Cir. 2020) (vacating district court's dismissal of plaintiff's state law claims where district court considered only the issue of supplemental jurisdiction and not whether it had jurisdiction under CAFA entirely independently of the pendant federal claim).

### B.  CAFA Jurisdiction

On its face, Plaintiff's Complaint explicitly identifies CAFA—not supplemental jurisdiction—as the basis for this Court's subject matter jurisdiction over her Unruh Act claim. (Compl. ¶ 9.) The Complaint's invocation of CAFA jurisdiction is not predicated upon mere legal conclusions. Indeed, the Complaint alleges each of the three requirements for CAFA jurisdiction. First, Plaintiff alleges that the action satisfies minimal diversity requirements, because Defendant, a citizen of either Delaware or New Jersey, does business in California and, thus, at least some proposed Class members will be citizens of California (Compl. ¶ 9). *See* 28 U.S.C. § 1332(d)(2). Second, Plaintiff alleges that, "[b]ased on the number of customers who have visited Defendant's California stores," the

number of class members will exceed well over 100 persons (Compl. ¶ 46). *See* 28 U.S.C. § 1332(d)(5). Third, Plaintiff alleges the amount in controversy exceeds $5,000,000 considering the size of the putative California Class and the requested form of monetary relief of $4,000 per violation per member (Compl. ¶¶ 9, 46). *See* 28 U.S.C. § 1332(d)(2). The Court must accept as true these allegations and draw all reasonable inferences therefrom in Plaintiff's favor. *See Leite*, 749 F.3d at 1121.

Because Plaintiff has sufficiently alleged the elements of CAFA, and because Defendant does not challenge in any aspect the sufficiency of those allegations, the Court finds that it has jurisdiction over Plaintiff's Unruh Act claims. *Mondragon*, 736 F.3d at 886 (vacating dismissal of state-law claims where complaint sufficiently alleged CAFA jurisdiction on its face); *see, e.g.*, *Alcazar v. Farmer Boys Food, Inc.*, 20-CV-0432-RGK-KS, 2020 WL 5984366, at *1 (C.D. Cal. July 14, 2020) (denying defendant's Rule 12(b)(1) motion to dismiss putative class action Unruh Act claim because motion addressed only the issue of supplemental jurisdiction and failed to refute the plaintiff's CAFA jurisdiction allegations).

Plaintiff's failure to argue the existence of CAFA jurisdiction in her Opposition makes no difference. It is well-settled that "a district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments." *United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966 (9th Cir. 2004); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 593 (2004) (instructing that "district courts have an independent obligation to address subject matter jurisdiction *sua sponte*") (citation omitted). The fact that the Complaint's CAFA allegations are sufficiently detailed and unchallenged is enough to invoke jurisdiction. *See Mondragon*, 736 F.3d at 886

Accordingly, this Court must maintain jurisdiction over Plaintiff's state-law claim and deny Defendant's Motion.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that it has jurisdiction over Plaintiff's Unruh Act claim pursuant to CAFA. Accordingly, the Court **DENIES** Defendant's Motion

to dismiss for lack of subject matter jurisdiction Count II. (ECF No. 7.) The Court retains jurisdiction over both the ADA claim and Unruh Act claim. However, because "[s]ubject matter jurisdiction can never be forfeited or waived," the Court's denial is without prejudice to a renewed motion challenging the alleged bases of CAFA jurisdiction. *Mashiri*, 724 F.3d at 1031; *see* Fed. R. Civ. P. 12(h)(3).

**IT IS SO ORDERED.**

**DATED: September 20, 2021**

Hon. Cynthia Bashant
United States District Judge